UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN RHOADS,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

Hon. Janet T. Neff

Case No. 1:09-CV-789

# REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 30 years of age at the time of the ALJ's decision. (Tr. 50, 129). The ALJ found that Plaintiff successfully completed high school[1] and worked previously as an industrial cleaner. (Tr. 48, 181).

Plaintiff applied for benefits on August 17, 2005, alleging that he had been disabled since July 2, 2005. (Tr. 129-31). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 51-128). On December 20, 2007, Plaintiff appeared before ALJ Steven Neary, with testimony being offered by Plaintiff, Plaintiff's mother, and vocational expert, Donna Whitcomb. (Tr. 301-27). In a written decision dated May 15, 2008, the ALJ determined that Plaintiff was not disabled. (Tr. 40-50). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 3-5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

---

[1] It is not clear that Plaintiff successfully completed high school. Plaintiff was not asked about the subject at the administrative hearing. (Tr. 303-15, 322-24). While Plaintiff's mother addressed the subject in her testimony, she seemed to indicate that Plaintiff did not successfully complete high school. (Tr. 315-21). The record also contains a fax cover sheet, apparently transmitted from Plainwell High School, that states Plaintiff "did not graduate." (Tr. 252).

# RELEVANT MEDICAL HISTORY

On December 12, 1985, Plaintiff, who was at the time eight years of age, participated in educational testing the results of which indicated that Plaintiff possessed a verbal IQ of 59, a performance IQ of 63, and a full-scale IQ of 60. (Tr. 290). School officials reported that Plaintiff was "functioning in the mildly retarded range of intellectual abilities." (Tr. 290).

Testing administered in September 1994, when Plaintiff was seventeen years of age, revealed that he possessed a verbal I.Q. of 75, a performance IQ of 73, and a full scale I.Q. of 73. (Tr. 281-83). The school psychologist concluded that Plaintiff "meets the criteria for a diagnosis of Educable Mentally Impaired." (Tr. 282). It was also noted that Plaintiff "demonstrates impairment in adaptive behavior." (Tr. 282).

On September 15, 2005, Plaintiff participated in a consultive examination conducted by Robert Griffith, Ph.D. (Tr. 203-06). When asked "what keeps him from working," Plaintiff responded that "he has a stuttering problem and a history of special education." (Tr. 203). Plaintiff reported that "he was always in special education with only a few regular education classes." (Tr. 204). Plaintiff reported that "he can read, but has difficulties with comprehension" and "would have some difficulties counting change." (Tr. 204). Plaintiff reported that he used to be employed at Meijer "working with bottles and recycling." (Tr. 204).

Plaintiff "presented as limited in his ability to describe his problems." (Tr. 205). He "was alert, but seldom answered questions directly." (Tr. 205). The doctor observed that Plaintiff exhibited "difficulties with abstract thinking and likely is limited in his reasoning skills to immediately available information." (Tr. 205). Plaintiff also exhibited limited mental capacity. (Tr.

205). Plaintiff was diagnosed with mild mental retardation and his GAF score was rated as 45.[2] (Tr. 206). Dr. Griffith characterized Plaintiff's prognosis as "poor, due to low ability level and lack of treatment." (Tr. 206).

On November 10, 2005, Plaintiff participated in a consultive examination conducted by Richard King, Ed.D. (Tr. 227-31). Plaintiff's performance on the WAIS-III revealed that he possesses a verbal IQ of 71, a performance IQ of 69, and a full-scale IQ of 67. (Tr. 229). Dr. King noted that "[t]his places [Plaintiff] in the mentally retarded range of intelligence and at approximately the first percentile of the population when compared with other individuals in his age range." (Tr. 229). The doctor observed that Plaintiff "did appear to put forth his best effort toward the testing tasks," but "did work at an exceptionally slow pace on the various testing tasks, especially when working on his own." (Tr. 227-28).

Dr. King reported that Plaintiff "will function best in quite simple and routine types of tasks which require little in the way of any formalized training." (Tr. 229). The doctor observed that Plaintiff "will need to have employment which is very simple, routine and primarily labor oriented in nature" and, moreover, "[t]asks which require much in the way of any verbal skills will certainly be problematic." (Tr. 230). Noting that Plaintiff "did work at a relatively slow pace," Dr. King reported that Plaintiff "does have the capability for very simple types of factory tasks which do not require much in the way of speed." (Tr. 230). Dr. King diagnosed Plaintiff with mild mental retardation. (Tr. 231).

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A score of 45 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

On November 20, 2007, Plaintiff was examined by Dr. Carl Rutt at the Oaklawn Psychiatric Center. (Tr. 292-94). Plaintiff reported that he was presently employed "unloading trucks" three days weekly. (Tr. 292). Plaintiff reported that he was initially employed as a dishwasher, but "was not able to keep up with the pace of the work." (Tr. 292). Plaintiff reported that he previously "has worked through Labor Ready Factory stacking wood chips and sealing boxes of wood chips, but apparently he could not keep up because they sent him home after about 2 hours." (Tr. 293). The results of a mental status examination were unremarkable, but Plaintiff exhibited intellectual limitations. (Tr. 293). Dr. Rutt observed that Plaintiff "appears to be motivated to work." (Tr. 293). Plaintiff was diagnosed with borderline IQ and his GAF score was rated as 41. (Tr. 294).

## ANALYSIS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffers from: (1) obsessive compulsive disorder; (2) depressive disorder; and (3) borderline intellectual functioning, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 42-46). The ALJ concluded that Plaintiff was able to perform his past relevant work as an industrial cleaner. (Tr. 48-49). The ALJ further found that even if Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 48-50). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v.*

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

*Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work at all exertional levels subject to the following limitations: (1) he can read and write at only the fifth grade level; (2) he has a limited ability to work with numbers; (3) he is limited to simple, repetitive tasks which are not face-paced and which do not require good oral communication skills. (Tr. 46).

At the administrative hearing, a vocational expert testified that Plaintiff's RFC (as determined by the ALJ) did not preclude the performance of his past relevant work. (Tr. 325-26). Relying on this testimony, the found that Plaintiff retained the ability to perform his past relevant work an as industrial cleaner. Thus, the ALJ found Plaintiff not disabled at Step IV of the aforementioned sequential process. As noted above, Plaintiff bears the burden of proof through Step IV. The ALJ also found, in the alternative, that even if Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which Plaintiff could perform. At Step V of the sequential process, the burden of proof shifts to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See*

*Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Donna Whitcomb.

The vocational expert testified that there existed approximately 3,965 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 325-26). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The vocational expert also testified, however, that if Plaintiff lacked the ability to "work at a competitive pace" there did not exist any jobs which he could perform. (Tr. 326).

I.    The ALJ's Conclusion that Plaintiff does not Satisfy Section 12.05(C) of the Listing of Impairments is not Supported by Substantial Evidence

Plaintiff asserts that he is entitled to disability benefits because he satisfies the requirements of section 12.05 (Mental Retardation) of the Listing of Impairments. The ALJ found that Plaintiff's impairments did not meet the requirements of this (or any other) listing.

Section 12.05 of the Listing provides, in relevant part, the following:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

9

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>   1. Marked restriction of activities of daily living; or
>
>   2. Marked difficulties in maintaining social functioning; or
>
>   3. Marked difficulties in maintaining concentration, persistence or pace; or
>
>   4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05 (2008).

Specifically, Plaintiff asserts that he satisfies section 12.05(C). In addition to satisfying the criteria identified above, Plaintiff must also satisfy the requirements articulated in the introductory paragraph of Section 12.05. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(A)

("[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets" section 12.05). Specifically, Plaintiff must establish that he satisfied the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05. *Cooper v. Commissioner of Social Security*, 217 Fed. Appx. 450, 451 (6th Cir., Feb. 15, 2007); *see also*, *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (to satisfy Section 12.05, the claimant must demonstrate that he experienced deficiencies in adaptive functioning prior to attaining the age of 22).

In evaluating Plaintiff's appeal, it must be remembered that Plaintiff bears the burden of establishing that he satisfies a particular Listing. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002) (the burden rests with the claimant to establish that he meets a listed impairment). As discussed below, the Court finds that the ALJ's rationale for rejecting Plaintiff's claim that he satisfies Section 12.00(C) is not supported by substantial evidence. The Court also finds, however, that Plaintiff has failed to carry his burden of establishing that he satisfies this particular Listing. The undersigned, therefore, recommends that this matter be remanded for further factual findings.

The ALJ rejected Plaintiff's claim that he satisfied Section 12.05(C) of the Listing, concluding as follows:

> Finally, the "paragraph C" criteria of Listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Although the claimant did attain I.Q. scores falling with[in] the "paragraph C" criteria at age 8, his age 17 I.Q. scores all fell within the range of borderline intellectual functioning. The Administrative Law Judge did note that the claimant attained I.Q. test scores at age 28 that met the "paragraph C" criteria but also notes

11

> that these scores were attained subsequent to age 22. Listing 12.05
> requires onset of mild mental retardation prior to age 22.

(Tr. 46).

The ALJ erred, first, in concluding that Plaintiff "does not have a valid verbal, performance, or full scale I.Q. of 60 through 70." As the ALJ correctly observed, testing administered when Plaintiff was 17 years of age indicated that he possessed a verbal I.Q. of 75, a performance IQ of 73, and a full scale I.Q. of 73. However, testing administered when Plaintiff was eight years old indicated that he possessed a verbal IQ of 59, a performance IQ of 63, and a full-scale IQ of 60. The ALJ simply ignored this evidence. While the ALJ is tasked with weighing the evidence of record and resolving conflicts therein, evaluating competing or conflicting evidence presupposes that all such evidence is considered and not simply ignored.

The Court further notes that testing administered when Plaintiff was 28 years of age indicated that he possesses a verbal IQ of 71, a performance IQ of 69, and a full-scale IQ of 67. The ALJ accorded no weight to this evaluation on the ground that "these scores were attained subsequent to age 22." The Court finds this conclusion to be in error. *See Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001) (in analyzing a claim under section 12.05, the court concluded that "absent evidence of sudden trauma that can cause retardation," IQ tests create a rebuttable presumption of a fairly constant IQ throughout a claimant's life).

In short, the record contains the results of three separate and distinct I.Q. tests, two of which satisfy Section 12.05(C). The ALJ failed to provide any factually or legally sufficient basis for simply adopting the results of one of the three examinations over the other two. This Court,

however, finds that it lacks the expertise and authority to resolve this factual dispute in the first instance, as such is a task assigned to the Commissioner.

The ALJ next erred when he concluded that "the claimant does not have. . .a physical or other mental impairment imposing an additional and significant work-related limitation of function." As noted above, the ALJ expressly found that Plaintiff, in addition to experiencing borderline intellectual functioning, also suffers from obsessive compulsive disorder and depressive disorder. The ALJ expressly found that these two latter impairments were "severe impairments." A severe impairment is defined as "any impairment or combination of impairments which *significantly limits your physical or mental ability to do basic work activities*." 20 C.F.R. § 404.1520(c) (emphasis added). The Court recognizes that an argument can perhaps be made why in this particular circumstance Plaintiff's obsessive compulsive disorder and depressive disorder do not "impos[e] an additional and significant work-related limitation of function." The ALJ, however, made no such argument, but instead relied on a conclusion, unsupported by facts or analysis and contradictory on its face with controlling regulations. An appropriate assessment of the extent to which Plaintiff's other impairments impact his ability to function is a matter that must be accomplished in the first instance by the Commissioner.

Furthermore, even if the Court assumes that Plaintiff can satisfy his burden of demonstrating: (1) a valid verbal, performance, or full scale IQ of 60 through 70; and (2) a physical or other mental impairment imposing additional and significant work-related limitation of function, to carry his burden of demonstrating that he satisfies the Listing in question, Plaintiff must also establish that he satisfied the "diagnostic description" of mental retardation articulated in the

13

introductory paragraph of Section 12.05. As previously noted, this requires Plaintiff to demonstrate that he experienced deficiencies in adaptive functioning prior to attaining the age of 22.

The Court recognizes that there exists in the record evidence supporting Plaintiff's position in this regard. It must be recognized as well that there exists evidence to the contrary. Plaintiff has maintained employment throughout much of his adult life.[4] Plaintiff has also reported engaging in a range of activities (e.g., having a girlfriend, playing video games, performing various household chores and activities) not necessarily consistent with the conclusion that he is mentally retarded. Such facts suggest that Plaintiff may not have experienced deficiencies in adaptive behavior prior to age 22, or thereafter for that matter. *See Burrell v. Comm. of Soc. Sec.*, 2000 WL 1827799 at *2 (6th Cir., Dec. 8, 2000) (no evidence of a deficit in adaptive functioning where claimant "remained fairly active, maintains an interest in his household, and enjoys apparent satisfactory relationships with family members"); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (claimant with a 10th grade education, who worked as an oil-changer, not disabled under section 12.05); *Williams v. Sullivan*, 970 F.2d 1178, 1185 (3rd Cir. 1992) (claim of mental retardation contradicted by the fact that claimant was able to "maintain a job for most of his adult life"); 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(D) (recognizing that when evaluating mental disorders, a claimant's work history is "particularly useful" in assessing the extent of impairment); *see also*, *Crayton v. Callahan*, 120 F.3d 1217, 1219-20 (11th Cir. 1997) ("a valid IQ score need not be conclusive of mental retardation, where the IQ score is inconsistent with other evidence in the record concerning the claimant's daily activities and behavior").

---

[4] The Court recognizes that there exists a dispute whether Plaintiff's employment constituted "sheltered" work. Such is one of the many factual issues that must be resolved in the first instance by the Commissioner on remand.

In sum, for the reasons articulated above, the Court finds that the ALJ's conclusion that Plaintiff does not satisfy Section 12.05(C) of the Listing of Impairments is in error. However, the Court also finds that Plaintiff has not met his burden of demonstrating that he satisfies the requirements of this provision. To conclude otherwise would require the resolution of factual disputes which this Court is neither competent nor authorized to resolve.

II.   The ALJ's Conclusion that there Exists a Significant Number of Jobs which Plaintiff can Perform Despite his Limitations is not Supported by Substantial Evidence

The ALJ concluded that Plaintiff was able to perform his past relevant work and further concluded that even if Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. In support of this conclusion, the ALJ relied upon the testimony of a vocational expert. The vocational expert also testified, however, that if Plaintiff lacked the ability to "work at a competitive pace" there did not exist any jobs which he could perform.

The ALJ acknowledged the evidence that Plaintiff experiences difficulty working "at a competitive pace," but rejected it for reasons not entirely clear. The ALJ noted that while "Dr. Rutt's evaluation appears to have been influenced by the claimant apparently reporting that he lost his job at Mei[j]er's because he could not keep up with his job which is not the explanation given to Dr. Griffith or the explanation given in the claimant's testimony. In both instances, the claimant indicated that he was terminated for not reporting to work." (Tr. 44).

First, being unable to maintain a competitive work pace and being terminated for failure to report to work are not mutually exclusive. Moreover, while the ALJ is correct that Plaintiff

testified that he was terminated from his job because he "didn't show up to work," Plaintiff also testified as to his inability to work at a competitive pace. (Tr. 4-14, 22-24). Plaintiff's mother likewise testified as to Plaintiff's difficulty in this regard. (Tr. 18-20). The ALJ's decision to disregard the evidence that Plaintiff experiences difficulty working at a competitive pace is not supported by substantial evidence. By extension, and considering the vocational expert's testimony concerning the issue of Plaintiff's ability to work at a competitive pace, the ALJ's RFC determination is, therefore, not supported by substantial evidence.

The vocational expert testified that given Plaintiff's RFC, there existed a significant number of jobs which Plaintiff could perform despite such limitations. However, the ALJ's RFC determination is not supported by substantial evidence. Because the vocational expert's testimony was premised upon a faulty RFC determination, the ALJ's reliance thereon does not constitute substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments).

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision fails to comply with the relevant legal standard, there does not exist *compelling* evidence that Plaintiff is disabled. As discussed herein, resolution of Plaintiff's claim requires the resolution of several factual disputes which this Court is neither authorized nor competent to undertake in the first instance. The undersigned recommends,

therefore, that the Commissioner's decision be reversed and this matter remanded for further factual findings.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: October 5, 2010                         /s/ Ellen S. Carmody
                                              ELLEN S. CARMODY
                                              United States Magistrate Judge